JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Patrick Boergert appeals from the decision of the trial court which, after a jury trial, found him guilty of one count of burglary in violation of R.C. 2911.12 and one count of theft in violation of R.C. 2913.02. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On August 3, 2002, victim James Vichill ("Vichill") and his fiancée broke their engagement and his fiancée returned the diamond ring he had given her. The next day, after many phone conversations with Vichill, his ex-fiancée became increasingly concerned that Vichill might harm himself. She called the police to check on Vichill. While the police were at Vichill's, appellant arrived and entered the home. Vichill's wallet and the engagement ring were on the dining room table in plain sight and Vichill and appellant openly discussed the broken engagement. At approximately 3:30, Vichill, who was drunk and tired, asked appellant to leave so he could go to sleep.
 {¶ 3} Vichill awoke from sleeping to find that his home had been burglarized and the air compressor, his wallet and the diamond ring had been stolen. He noticed that the front door, which he had locked before going to sleep, was open. Vichill immediately went to appellant's house next door because appellant had been the last person in his home before he went to sleep. He did not find appellant home, but he did speak to appellant's brother, Scott Boergert, and informed him about the burglary. Scott told Vichill that he had not seen his brother for some time. Vichill returned home and called the police. When the police arrived and looked around with Vichill, they noticed that the screen to the basement had been cut and a snowblower and dehumidifier were also missing.
 {¶ 4} Scott came over while an officer was talking to Vichill to ask Vichill if he was missing a red toolbox. Vichill responded that he was, and Scott informed them that the toolbox was in appellant's home in a closet. Upon further inquiry, Scott informed them that he had not seen appellant since he had left the house at approximately 3:00 p.m. Scott testified at trial that, after he returned home between 8:00 and 9:00 that night, his brother called wanting to know if anyone was looking for him. Scott stated that this was unusual. When appellant returned home the next morning, Scott called the police.
 {¶ 5} That morning, police received information about charges on Vichill's stolen credit cards. As the officer was speaking to Vichill, he noticed appellant walking down the street and he appeared to be intoxicated. Upon the officer's request, appellant approached the officer and Vichill and began talking with them about the theft. The police arrested appellant and he maintained that co-defendant Jim Lombardo was responsible for the burglary.
 {¶ 6} Lombardo testified that sometime in the late afternoon of August 4, 2002, appellant approached him and stated that he had stolen credit cards and wanted Lombardo to accompany him to buy an air compressor with them. Lombardo agreed and they went to Home Depot and bought the compressor, using Vichill's credit card. Lombardo testified at trial that appellant dropped him off, then went to sell the air compressor with an unidentified friend. When the two returned, they gave Lombardo $160 from the sale. Lombardo also testified that he used Vichill's credit card at a golf course, while appellant was with him. At trial, defense counsel impeached Lombardo's credibility by introducing his extensive criminal history.
 {¶ 7} The state presented rebuttal testimony of appellant's girlfriend, who testified that appellant was with her when the alleged purchases were made with Vichill's credit card. The state impeached her credibility by offering testimony of Detective Lissner who noted that during the course of the investigation, this information had never been provided to the police. Detective Lissner also read appellant's statement into the record, which indicated that he was at a friend's house that night. The statement revealed that after learning of the burglary, appellant claimed Lombardo had confessed the crime to him.
 {¶ 8} The matter was submitted to a jury, which returned guilty verdicts on both counts. It is from this ruling that appellant now appeals, asserting three assignments of error for our review.
 {¶ 9} "I. The appellant was denied due process of law and a fair trial due to the admission of alleged `other acts' evidence."
 {¶ 10} In his first assignment of error, appellant alleges that he was denied a fair trial after the trial court twice improperly allowed highly prejudicial "other acts" evidence. We disagree.
 {¶ 11} It is axiomatic that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus, see alsoState v. Bey (1999), 85 Ohio St.3d 487, 490. Where an error in the admission of evidence is alleged, appellate courts do not interfere unless it is shown that the trial court clearly abused its discretion.State v. Maurer (1984), 15 Ohio St.3d 239. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. The Supreme Court of Ohio has explained this standard as follows:
 {¶ 12} "An abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such a determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 87.
 {¶ 13} Evid.R. 404(B) provides that evidence of other acts is not admissible to prove the character of a person in order to show that the accused acted in conformity therewith. Evidence of other bad acts is generally prejudicial and generally is prohibited by Evid.R. 404(B). See, e.g., State v. Curry (1975), 43 Ohio St.2d 66, 68-69.
 {¶ 14} Appellant alleges that the court should not have admitted Vichill's testimony that he suspected appellant of stealing the items missing from his home because he knew that appellant had been involved in a prior theft in his neighborhood. We note, however, that the trial court did not admit such testimony. During Vichill's testimony, the prosecutor asked him why he went to appellant's apartment. Vichill responded that "there had been another robbery." This response, which prompted a defense objection, did not indicate to the jury that appellant was the person suspected of the alleged "theft in the neighborhood." In fact, the response could have been interpreted to mean that Vichill went to appellant's simply to discuss the theft at his house and to obtain more information about the prior theft in an attempt to determine who had stolen items from his home.
 {¶ 15} Furthermore, upon objection, the trial court immediately conducted an extensive discussion at sidebar and specifically prohibited the prosecutor from eliciting any testimony of the speculative nature of appellant's alleged prior theft. The trial court only allowed the prosecutor to elicit testimony that Vichill suspected appellant of the theft because appellant was the last person in Vichill's home. Appellant's contention that the trial court allowed testimony by Vichill, that appellant had been involved in another theft in the neighborhood, is wholly unsupported by the record.
 {¶ 16} Appellant also challenges the admission of testimony by his co-defendant, Mr. Lombardo, that he met appellant when appellant was trying to sell drugs. At the beginning of his testimony, the prosecutor asked Lombardo how he came to know the defendant. Lombardo responded that he met appellant when appellant approached him on the street and asked Lombardo if he wanted to buy some rocks. He further testified that he met appellant again a couple of weeks later and the two went out partying. We note initially that appellant failed to object to any alleged error and has therefore waived all but plain error. State v. Hartman,93 Ohio St.3d 274, 281, 2001-Ohio-1580; State v. Allen (1995),73 Ohio St.3d 626, 634. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 17} Mr. Lombardo made only brief mention of appellant's alleged drug activity. The testimony was an unanticipated answer to a common question admitted for the sole purpose of explaining how he came to know appellant and live with him. We cannot say that the outcome of appellant's trial would clearly have been otherwise but for the brief reference to Lombardo meeting appellant on the street. Accord State v. Avery (Sept. 6, 1995), Hamilton App. No. C-940422. We therefore overrule appellant's first assignment of error.
 {¶ 18} "II. The appellant was denied effective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution."
 {¶ 19} Appellant contends that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of other acts testimony, to provide the trial court with a requested brief, to renew a Crim.R. 29 motion and failed to properly impeach a state's witness. We disagree.
 {¶ 20} In order to demonstrate ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. See Strickland v. Washington
(1984), 466 U.S. 668, 687; State v. Noling (2002), 98 Ohio St.3d 44, 65,2002-Ohio-7044; State v. Bradley (1989), 42 Ohio St.3d 136. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see, also, Bradley,
paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation). To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph two of the syllabus; see, also, Strickland,466 U.S. at 687. Moreover, when a reviewing court considers an ineffective assistance of counsel claim, it should not consider what, in hindsight, may have been a more appropriate course of action. See State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland, 466 U.S. at 689. As the Strickland Court stated, a reviewing court:
 {¶ 21} "Must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. 466 U.S. at 689; see, also, State v. Hamblin (1988),37 Ohio St.3d 153, certiorari denied (1988), 488 U.S. 975.
 Failure to object to admission of "other acts" testimony. {¶ 22} Appellant maintains that his trial counsel's failure to object to two instances of alleged prior bad acts constitutes ineffective assistance of counsel. As stated in the preceding assignment of error, appellant's first named instance of alleged "other acts" testimony was not admitted before the jury. Appellant next contends that trial counsel was ineffective for failing to object to testimony by Lombardo that he came to know appellant when he was approached by him to buy some rocks.
 {¶ 23} The Ohio Supreme Court has stated that the failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance of counsel. State v. Hartman, supra. "Because `objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs, Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object in the jury's presence." State v. Campbell (1994), 69 Ohio St.3d 38, 53. Id. Objecting to Mr. Lombardo's testimony regarding how he came to know appellant may have brought to the jury's attention that appellant may have had committed prior bad acts. We find that trial counsel's failure to object to the admission of Mr. Lombardo's testimony regarding how he came to know appellant was a "tactical decision" and does not constitute ineffective assistance of counsel. Accord State v. Hartman, supra.
 B. Failure to properly impeach state's witness. {¶ 24} Appellant contends that he was denied effective assistance of counsel as a result of his trial counsel's failure to properly impeach the state's witness, Scott Boergert. Specifically, appellant contends that after a sidebar discussion, the trial court ruled that use of Scott's prior conviction was admissible for impeachment purposes.
 {¶ 25} During cross-examination of Scott, appellant's trial counsel asked him, "Isn't it true that you performed this crime, broke into that house, entered the house while he was sleeping, just like the crime that you pled guilty to in this very courthouse a year ago for breaking and entering?" (T. 297). The state immediately objected and the trial court called for a sidebar discussion. During an extensive sidebar, the trial court decided that inquiring into the witness' prior first degree misdemeanor conviction was relevant to the case. The trial court stated, "Okay. The objection's sustained as to the question that was posed. This is relevant enough to inquire about. Relevant time." (T. 303). The trial judge did, however, sustain the state's objection and ordered the question and answer stricken. Thereafter, defense counsel was afforded an opportunity to properly impeach Scott Boergert regarding his prior conviction, which defense counsel declined to do.
 {¶ 26} In this case, appellant has failed to demonstrate prejudice. The extensive cross-examination of witness Lombardo leads this court to believe that trial counsel sought to focus on undermining the credibility of the most damaging witness to the defense, Mr. Lombardo. We cannot say that had counsel impeached Boergert with the evidence of his prior conviction, appellant would not have been convicted, and we therefore decline to find ineffective assistance of counsel.
 C. Failure to provide court with requested brief and failure to renew Crim.R. 29 motion. {¶ 27} Appellant also maintains that his trial counsel was ineffective for failing to file a brief in support of a Crim.R. 29 motion and for failing to renew his Crim.R. 29 motion at the close of all the evidence. However, appellant does not even allege that this failure in any way prejudiced him. In the absence of prejudice to an appellant, this court need not determine whether trial counsel's error was ineffective. This assignment of error is not well-taken.
 {¶ 28} "III. The verdict finding the appellant guilty of burglary was against the manifest weight of the evidence."
 {¶ 29} In his final assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. We disagree.
 {¶ 30} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts, in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387, 1997-Ohio-52, citing Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. Accord State v. Otten (1986), 33 Ohio App.3d 339, 340. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v.Thompkins, supra.
 {¶ 31} We further note that circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned; all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 32} R.C. 2911.12 (A)(1) provides that no person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense.
 {¶ 33} R.C. 2913.02 (A)(1) provides that no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services without the consent of the owner or person authorized to give consent.
 {¶ 34} In this case, Vichill testified that appellant was the last person in his home, who witnessed his intoxicated state and would have known that he would be in an alcohol-induced deep sleep. He also testified that the engagement ring and his wallet and keys were in plain view while appellant was over. Scott Boergert also testified that Vichill's red toolbox was in appellant's closet. Furthermore, Lombardo testified that appellant told him he had Vichill's credit cards and proceeded to go on a spending spree with them. While Lombardo's credibility was undermined, so was the credibility of appellant's rebuttal witness, who testified that appellant was with her during the times that appellant allegedly used the credit cards.
 {¶ 35} While the evidence presented against appellant was circumstantial, in considering the credibility of the witnesses and all reasonable inferences therefrom, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. We therefore overrule this assignment of error.
 {¶ 36} The judgment is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, J., and Diane Karpinski, J., Concur.