[Cite as *State v. Stroud*, 2023-Ohio-569.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS. **2022-A-0032**<br>**2022-A-0033**<br>**2022-A-0034** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeals from the<br>Municipal Court |
| WILLIAM M. STROUD, | |
| Defendant-Appellant. | Trial Court Nos. 2021 CRB 00654 A<br>2021 CRB 00654 B<br>2021 CRB 00654 C |

**O P I N I O N**

Decided: February 27, 2023
Judgment: Affirmed

*Cecilia M. Cooper*, Ashtabula City Solicitor, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Rachel A. Kopec*, 50 Public Square, Suite 1900, Cleveland, OH 44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}  Appellant, William M. Stroud ("Mr. Stroud"), appeals from the judgments of the Ashtabula Municipal Court, which convicted and sentenced him to two concurrent terms of 180-days in jail, with 90 days suspended, followed by a two-year term of community control.  After a bench trial, Mr. Stroud was found guilty of assault and possession of criminal tools, both first-degree misdemeanors.  Mr. Stroud's convictions arose from an incident in which he was discovered attempting to break into cars in the parking lot of the Ashtabula County Medical Center ("ACMC").  When a security guard

attempted to restrain him, he struck the guard with a hammer, rupturing the guard's Achilles tendon.

{¶2} Mr. Stroud raises five assignments of error on appeal, contending that (1) the evidence is insufficient to sustain his convictions for assault and possession of criminal tools; (2) the manifest weight does not support his convictions; (3) the trial court abused its discretion by allowing the state's witnesses to testify in rebuttal, when they were in violation of the court's separation order; (4) trial counsel was ineffective in failing to conduct a proper and sufficient cross-examination of the state's witnesses, to make proper objections to "other acts" evidence, to move for a Crim.R. 29 acquittal, and the cumulative effect of these errors resulted in substantial error affecting the outcome of the trial; and, lastly, (5) these multiple instances of error, though they may be individually harmless, cumulatively violated his rights to due process.

{¶3} After a careful review of the record and pertinent law, we find Mr. Stroud's assignments of error to be without merit. Firstly, the state introduced more than sufficient evidence from which a trier of fact could find, beyond a reasonable doubt, that Mr. Stroud was attempting to break into vehicles in the ACMC parking lot with hand tools and that he assaulted a security guard with a hammer. More specifically, the state introduced testimony of an eyewitness who observed Mr. Stroud attempting to break into cars with hand tools, and who also found more of his tools by a vehicle he attempted to break into. Further, the testimony of the security guard and the arresting officers recounted the assault and Mr. Stroud's arrest.

{¶4} Secondly, Mr. Stroud's argument that the manifest weight of the evidence does not support his convictions concerns the competing version of events, which weigh

Case Nos. 2022-A-0032, 2022-A-0033, 2022-A-0034

heavily in favor of the trial court's findings. Quite simply, this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶5} Thirdly, we do not find the trial court abused its discretion in allowing the state's witnesses to testify in rebuttal after Mr. Stroud testified in his own defense. It is undisputed from our review of the record that there is no evidence that the state improperly allowed witnesses to remain in the courtroom in contravention of the court's separation order after they testified and that the rebuttal testimony is generally repetitive of the witnesses' previous testimony. Most fundamentally, this matter was tried to the bench, and the court is presumed to know and follow the law unless the record affirmatively demonstrates to the contrary.

{¶6} Fourthly, Mr. Stroud failed to demonstrate his trial counsel fell below an objective standard of reasonableness in his cross-examination of the state's witnesses or that any prejudice resulted from his counsel's trial strategy. Similarly, Mr. Stroud failed to demonstrate that his trial counsel erred in failing to object to the security guard and the officers' identification testimony. All three testified that they were "familiar" with Mr. Stroud, in large part, due to his medical conditions. Failing to object may have been a sound trial strategy in light of Mr. Stroud's extensive criminal history. Since we found there was no merit in Mr. Stroud's sufficiency of the evidence argument, his counsel's failure to make a Crim.R. 29 motion for acquittal is not ineffective assistance of counsel. Such a motion is pointless under these circumstances. Finally, cumulative error cannot be established by simply joining Mr. Stroud's meritless claims of ineffective assistance of counsel together.

3

{¶7} Lastly, since Mr. Stroud failed to establish any instances of harmless error, and we found his previous assignments of error to be without merit, the cumulative error doctrine does not apply.

{¶8} The judgments of the Ashtabula Municipal Court are affirmed.

## Substantive and Procedural History

{¶9} In May 2021, a complaint was filed in the Ashtabula Municipal Court, charging Mr. Stroud with assault, a first-degree misdemeanor, in violation of R.C. 2903.13(A); possessing criminal tools, a first-degree misdemeanor, in violation of R.C. 2923.24(A); and criminal trespass, a fourth-degree misdemeanor, in violation of R.C. 2911.21(A)(1).

{¶10} The case proceeded to a one-day bench trial. Prior to the state's first witness, the court granted defense counsel's motion to separate the witnesses.

{¶11} The state presented evidence that on May 12, 2021, a patient alerted the outpatient physical therapy office of ACMC that someone was breaking into cars. Tammy Elliott ("Ms. Elliott"), an employee, told her coworker to call security and the patient to stay inside until security arrived. Ms. Elliott cracked open the door and, through the windows of the parked cars in the employee parking lot, she was able to observe Mr. Stroud pounding on a driver's side car window with a screwdriver. A few moments later, Ms. Elliott looked outside a second time and observed Mr. Stroud at a different vehicle, once again pounding on the driver's side window.

{¶12} Head of security and the victim in this case, Kevin Sandella ("Mr. Sandella"), testified that he headed over to the scene after he heard the security guards on the radio mention that Mr. Stroud was carrying tools. He called the Ashtabula City Police Department for assistance. When he arrived, he recognized Mr. Stroud, who was

4

standing in the parking lot with a hammer in one hand and a screwdriver in the other. Mr. Sandella yelled five or six times for Mr. Stroud to put down his tools. Mr. Stroud refused and approached Mr. Sandella. When Mr. Stroud was approximately two feet away, Mr. Sandella tackled Mr. Stroud to the ground. Mr. Sandella was afraid that Mr. Stroud was going "to take a swing at him." As soon as they hit the ground, Mr. Sandella felt intense pain, as if he "got shot" in the back of his leg. He realized Mr. Stroud had hit him with his hammer, rupturing his Achilles tendon. Not knowing if Mr. Stroud was going to hit him again, Mr. Sandella hit Mr. Stroud in the face. The other security guards attempted to restrain Mr. Stroud while Mr. Sandella called the police for a second time.

{¶13} While security was confronting Mr. Stroud, Ms. Elliott walked the patient to her car, where they found screwdrivers on the ground near the patient's vehicle. Ms. Elliott took the tools and placed them in Mr. Sandella's truck with the rest of Mr. Stroud's tools.

{¶14} When Ashtabula City Police Department Patrolmen Thomas Clemens, Jr. ("Officer Clemens") and Wayne Howell, Jr. ("Officer Howell") arrived, they observed the security guards restraining Mr. Stroud, whom both officers recognized. The officers handcuffed Mr. Stroud. Officer Clemens described Mr. Stroud's demeanor as "highly agitated" and "not in his right mind." Mr. Sandella was transported to the hospital. He subsequently had two operations on his Achilles tendon; however, he was unable to fully regain functionality.

{¶15} On the way to the jail, Officer Howell, who was aware of Mr. Stroud's medical conditions, noticed Mr. Stroud was having difficulty forming sentences and focusing. When they arrived, they called an ambulance to transport Mr. Stroud to the hospital due to his diabetic condition.

5

{¶16} Mr. Stroud testified in his own defense, explaining that his van had broken down in the parking lot of Dollar General the night before. In addition, he was flustered and locked the keys inside. The next day, he walked from his house to Dollar General with his hand tools. He was unable to start his van and cut through ACMC's parking lot on his way home. He dropped a handful of tools and crawled under a car to try find a wrench, a pair of needle nose pliers, and a screwdriver. The security guards arrived soon after. Before he could lie down on the ground, Mr. Sandella tackled him to the ground and punched him in the face. His head hit the concrete, cracking his occipital bone. Mr. Stroud claimed he had a suspected concussion, which was why he was transported to the hospital from the jail. He received four or five stiches. He also denied striking Mr. Sandella with his hammer.

{¶17} The state recalled Mr. Sandella and Officer Howell as rebuttal witnesses. Mr. Sandella disputed that Mr. Stroud had a wrench and/or pliers in his possession, that he ran from a distance when he restrained Mr. Stroud to the ground, and that Mr. Stroud was at the hospital for 14 hours getting a CT scan following the incident. He did not observe any injuries on Mr. Stroud, aside from his eye, where he had punched Mr. Stroud. Officer Howell similarly did not observe any injuries. He further testified that Mr. Stroud appeared excited, with a flushed face, but had no visible physical injuries and that the ambulance was called strictly for a diabetic issue.

{¶18} The court found that the state proved, beyond a reasonable doubt, that Mr. Stroud committed assault and that he was in possession of criminal tools. The court dismissed the criminal trespass charge after finding there was insufficient evidence to support it.

6

{¶19} At the sentencing hearing several weeks later, Mr. Stroud explained his version of the incident for the court once more. He denied that he struck Mr. Sandella, and he avowed that he meant no harm. The trial court sentenced Mr. Stroud to two concurrent 180 day-jail terms, with 90 days suspended, followed by a two-year term of community control, as well as a mental health assessment and fines.

{¶20} Mr. Stroud raises five assignments of error for our review:

{¶21} "[1.] The trial court erred as a matter of law in finding the Appellant guilty when there was not sufficient evidence to support the convictions.

{¶22} "[2.] The manifest weight of the evidence did not support the convictions.

{¶23} "[3.] The trial court abused its discretion by allowing rebuttal witnesses to testify, despite a separation of witnesses.

{¶24} "[4.] Trial counsel was ineffective.

{¶25} "[5.] The cumulative effects caused a violation of Appellant's due process rights."

## Sufficiency of the Evidence

{¶26} Mr. Stroud first contends that the evidence was insufficient to sustain his convictions for assault and possession of criminal tools. More specifically, he argues it defies logic that he could have struck Mr. Sandella with a hammer after being tackled to the ground. He also asserts there was no testimony that he was in possession of criminal tools.

{¶27} At the outset we note, as raised in Mr. Stroud's ineffective assistance of counsel claim, that he failed to make a Crim.R. 29 motion for acquittal. To preserve the right to appeal the sufficiency of the evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court. If a Crim.R.

7

29 motion is not made by a defendant, as a general rule, he or she waives any sufficiency argument on appeal. *State v. Perry*, 11th Dist. Trumbull No. 94-T-5165, 1997 WL 590789, *10 (Aug. 29, 1997). However, as the Second District noted in *State v. Ropp*, 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, the Supreme Court of Ohio has held that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an appeal concerning the sufficiency of evidence, but that a "not guilty" plea preserves the right to object, and because it constitutes a denial of due process, a conviction based upon insufficient evidence almost always amounts to plain error. *Id.* at ¶ 30; *see State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992); *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). Under either a sufficiency or a plain error analysis (since this involves a "not guilty" plea and the insufficiency of the evidence necessarily implicates due process), Mr. Stroud's assignment of error is without merit.

{¶28} Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶29} When reviewing whether sufficient evidence was presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Thus, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a

8

weighing of the evidence. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4 (Dec. 23, 1994).

{¶30} Mr. Stroud was convicted of assault pursuant to R.C. 2903.13(A), which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."

{¶31} As our review of the trial testimony revealed, the state introduced evidence that Mr. Sandella observed Mr. Stroud with a hammer in one hand and a screwdriver in another. Mr. Stroud refused to lay down his tools and continued approaching Mr. Sandella despite Mr. Sandella's warnings to stop and to put down his tools. When Mr. Sandella attempted to restrain him, Mr. Stroud struck him in the back of his leg, rupturing his Achilles tendon. Thus, the state introduced sufficient evidence from which a trier of fact could find, beyond a reasonable doubt, that Mr. Stroud assaulted Mr. Sandella.

{¶32} While Mr. Stroud contends that it defies logic that he could strike Mr. Sandella with a hammer after being tackled to the ground, that argument goes not to the sufficiency of the evidence, but rather the manifest weight of the evidence, and the trial court was free to believe the state's competing version of events. *Ashland v. Francis*, 5th Dist. Ashland No. 17-COA-007, 2017-Ohio-8525, ¶ 22 *(*As to any perceived inconsistencies in the testimony, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact).

{¶33} Mr. Stroud also contends the evidence was insufficient to sustain his conviction for possession of criminal tools, in violation of R.C. 2923.24(A), which provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶34} Mr. Stroud claims that the only testimony relevant to the possession of criminal tools was that he was carrying tools through a parking lot. Our review of the state's evidence belies this assertion. Ms. Elliott testified that she observed Mr. Stroud breaking into two vehicles with his hand tools and that she found several tools by a patient's vehicle. Mr. Sandella testified that Mr. Stroud had a hammer in one hand and a screwdriver in the other and that Mr. Stroud struck the back of his leg with the hammer. Both officers saw the hammer and entered it as evidence at the station. Thus, there was more than sufficient evidence from which a trier of fact could reasonably conclude that Mr. Stroud possessed hand tools with the purpose to use them criminally, i.e., to break into motor vehicles and, as circumstances arose, to commit assault.

{¶35} Mr. Stroud's first assignment of error is without merit.

### Manifest Weight of the Evidence

{¶36} For similar reasons, Mr. Stroud contends the manifest weight of the evidence weighs heavily against his convictions because the state did not explain how Mr. Stroud was able to strike Mr. Sandella after he was tackled to the ground while Mr. Stroud was suffering a diabetic episode. Further, Mr. Stroud contends there was no testimony or photographs regarding the possession of criminal tools.

{¶37} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual

10

findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶38}** As we noted in our discussion of Mr. Stroud's first assignment of error addressing the sufficiency of the evidence, there was direct and circumstantial evidence by way of witness testimony that Mr. Stroud struck Mr. Sandella with a hammer and that he was in possession of his hand tools to carry out a criminal purpose. Mr. Stroud's arguments concern the competing version of events, which weigh heavily in favor of the trial court's findings. Quite simply, this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175. The trier of fact neither lost its way nor created a miscarriage of justice in finding Mr. Stroud guilty of assault and possession of criminal tools.

**{¶39}** Mr. Stroud's second assignment of error is without merit.

### Separation of Witnesses

**{¶40}** In his third assignment of error, Mr. Stroud contends the trial court erred by allowing Mr. Sandella and Officer Howell to testify as rebuttal witnesses following Mr. Stroud's testimony in violation of the court's separation order.

**{¶41}** The purpose of separating witnesses is to prevent them from hearing the testimony of other witnesses and tailoring their testimony accordingly. *State v. Waddy*, 63 Ohio St.3d 424, 434, 588 N.E.2d 819 (1992); Evid.R. 615. Generally, a trial court's determination to allow a witness to testify despite a violation of its separation order will not be reversed on appeal absent an abuse of discretion. *See State v. Morris*, 8 Ohio App.3d 12, 17, 455 N.E.2d 1352 (8th Dist.1982).

11

{¶42} An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

{¶43} In reviewing the trial court's actions, an appellate court must keep in mind that "'[e]vidence should not be excluded unless procurement of the violation by the opposing party, or his connivance in it, is shown. The preferred sanction is simply to allow the transgression to reflect upon the witness's credibility.'" *State v. Lawler*, 6th Dist. Lucas No. L-03-1025, 2005-Ohio-134, ¶ 24, quoting *State v. Williams*, 2d Dist. No. 97-CA-0131 (Oct. 16, 1998).

{¶44} As the state points out in its brief, defense counsel objected to Mr. Sandella being called as a rebuttal witness because he was in the courtroom during Mr. Stroud's testimony. No such objection was made prior to Officer Howell's testimony, and it is unclear from the record whether he was in the courtroom during Mr. Stroud's testimony.

{¶45} Regardless, it is undisputed from our review of the record that there is no evidence that the state improperly allowed Mr. Sandella and Officer Howell to remain in the courtroom for Mr. Stroud's testimony. Furthermore, a review of the rebuttal testimony of Mr. Sandella and Officer Howell reveals it is generally repetitive of their previous testimony. *See State v. Haddad*, 9th Dist. Medina No. 710, 1977 WL 198999, *9 (Aug. 31, 1977) (No abuse of discretion was indicated by allowing witness who observed

12

remaining trial proceedings to testify as a rebuttal witness where there was no showing of connivance by the prosecution and the testimony was generally repetitive of his previous testimony). Moreover, in a bench trial, the court is presumed to know and follow the law unless the record affirmatively demonstrates to the contrary. *State v. Gilcrease*, 8th Dist. Cuyahoga No. 108148, 2020-Ohio-487, ¶ 52; *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987) (In a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence).

{¶46} Mr. Stroud's third assignment of error is without merit.

## Ineffective Assistance of Counsel

{¶47} In his fourth assignment of error, Mr. Stroud contends his trial counsel was ineffective because he did not properly cross-examine the prosecution witnesses, object to "other acts evidence," and failed to move for a Crim.R. 29 acquittal. He further argues that even if these individual errors do not rise to the level of ineffective assistance of counsel, cumulatively they resulted in substantial prejudice, which affected the trial's outcome.

{¶48} To establish that one's counsel was ineffective, a defendant must demonstrate (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

13

### *Cross-examination of the State's Witnesses*

**{¶49}** Mr. Stroud first contends his trial counsel was ineffective because he failed to properly cross-examine the state's witnesses. For instance, he claims a proper cross-examination of Mr. Sandella would have demonstrated that it was impossible for Mr. Stroud to strike Mr. Sandella with a hammer after being tackled to the ground. Further, a more thorough cross-examination of Ms. Elliott would have revealed whether she could have actually observed Mr. Stroud in the parking lot by peering through car windows from the door of ACMC.

**{¶50}** "Trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 55. "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *Id.*

**{¶51}** Our review of the trial transcript reveals that Mr. Stroud has not demonstrated that his trial counsel fell below an objective standard of reasonableness. Rather, Mr. Stroud's trial counsel extensively questioned Ms. Elliott as to her observations, asking, for example: "So there's buildings, sidewalk, and then cars were parked, and that's where you saw the defendant; is that correct?"; "And as you stood in the door, how many cars were between you and the defendant?"; "Okay. So there was a car between you. You've said you could see things through the windows?" Mr. Stroud's trial counsel similarly questioned Mr. Sandella on his "tackle" of Mr. Stroud and his nonviolent intervention training. Even if we did find defense counsel's cross-examination

14

tactics debatable, Mr. Stroud has not demonstrated any prejudice that affected the outcome of the trial. Most fundamentally, this matter was tried to the bench, and the court was more than aware of Mr. Stroud's version of events. *See Post*, *supra*, at 384 (In a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence).

### *Failure to Object*

**{¶52}** Mr. Stroud next contends that his trial counsel was ineffective for failing to object to "other acts evidence," i.e., when Mr. Sandella and the officers identified Mr. Stroud at the scene.

**{¶53}** To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 65 (10th Dist.). If the objection would not have been successful, the appellant cannot prevail on a claim of ineffective assistance of counsel. *Id.*

**{¶54}** Our review of the trial transcript reveals that the witnesses were able to identify Mr. Stroud during the incident. Thus, Mr. Sandella testified: "As soon as I got there, I saw Mr. Stroud who is – he's been to the hospital numerous times." Officer Howell testified: "When I got in my car, I immediately recognized him as William Stroud. I've had numerous dealings with him in my career." When questioned whether he spoke with Mr. Stroud while transporting him to the jail, Officer Howell further testified: "In my dealings with Mr. Stroud, some of them had been medical. I knew him to be a diabetic, and this case, it appeared to me to be having some type of sugar issue because he would stare at you." Similarly, Officer Clemens testified to his arrival on the scene of the incident:

15

"When I pulled into the lot they had a subject down, which I was familiar with, Mr. William Stroud."

{¶55} An objection on these grounds was likely to be unsuccessful since the witnesses were simply identifying Mr. Stroud based upon their familiarity with him.  At the time of trial, Evid.R. 404(B), in relevant part, stated:  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action or conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident."  (Emphasis added.)  Further, trial counsel's decision not to object was likely a strategic decision to not call attention to Mr. Stroud's extensive criminal history.  *See, e.g., State v. Boergert*, 8th Dist. Cuyahoga No. 82220, 2003-Ohio-6492, ¶ 23.  In fact, Mr. Sandella and Officer Howell testified that their familiarity with Mr. Stroud was in large part due to Mr. Stroud's medical issues, which was a part of Mr. Stroud's own defense.  And, as already noted, this matter was tried to the bench.  Thus, we presume, unless affirmatively shown otherwise, that the court only considered the testimony for proper purposes.  *State v. Finley*, 8th Dist. Cuyahoga No. 108062, 2019-Ohio-3891, ¶ 54.

### Crim.R. 29 Motion for Acquittal

{¶56} Mr. Stroud also contends that his counsel was ineffective for failing to make a Crim.R. 29 motion for acquittal.  Counsel's failure to make a Crim.R. 29 motion for acquittal, however, is not ineffective assistance of counsel where such a motion would have been fruitless.  *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 36.  While it is customary for defense counsel to make a motion for acquittal as a matter of course to test the sufficiency of the state's evidence, the failure to follow that

16

course of action did not mean the performance of appellant's trial counsel fell below a reasonable standard of representation.  *Id.*; *State v. Reed*, 6th Dist. Wood No. WD-97-031, 1998 WL 102135, *2 (Feb. 27, 1998).

### *Cumulative Error*

{¶57} Lastly, Mr. Stroud contends that even if these alleged instances of ineffective assistance of counsel individually do not rise to the level of prejudice, the cumulative effect of these errors resulted in prejudice that affected the trial's outcome. Since we find Mr. Stroud failed to establish any instances of ineffective assistance of counsel, this argument necessarily fails.  As the Supreme Court of Ohio succinctly explained in *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, "[e]ach assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together."  *Id.* at ¶ 170.

{¶58}  Mr. Stroud's fourth assignment of error is without merit.

### Cumulative Error

{¶59}  In his fifth assignment of error, Mr. Stroud contends that even if we find his previous assignments of error to be harmless error, the cumulative effects of those errors deprived him of his right to due process.

{¶60}  Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."  *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).  "'Before we consider whether "cumulative errors" are present, we must first find

17

Case Nos. 2022-A-0032, 2022-A-0033, 2022-A-0034

that the trial court committed multiple errors.'" *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶ 106 (4th Dist.), quoting *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 57.

**{¶61}** The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.'" *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148, quoting *Garner* at 64.

**{¶62}** Mr. Stroud argues that his trial counsel's and the trial court's cumulative errors violated his constitutional right to due process. However, because none of Mr. Stroud's individual assignments of error have merit, he "cannot establish an entitlement to relief simply by joining those claims together." *Id.* at ¶ 173.

**{¶63}** Mr. Stroud's fifth assignment of error is without merit.

**{¶64}** The judgments of the Ashtabula Municipal Court are affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.